**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

**IN RE: RS, LLC,**
**Debtor and Debtor-in-Possession.**

**CASE NO. 26-02354-JAW**
**CHAPTER 11**
**SUBCHAPTER V**

# DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION

RS, LLC (the "Debtor"), as debtor and debtor-in-possession, proposes this Chapter 11 Subchapter V Plan of Reorganization under 11 U.S.C. §§ 1189, 1190, 1191, and other applicable provisions of the Bankruptcy Code.

## ARTICLE I
## BUSINESS HISTORY, CASE BACKGROUND, AND PLAN OBJECTIVES

### 1.1 The Debtor and Its Business.

The Debtor is a Mississippi limited liability company headquartered in Brandon, Mississippi. Reginald Jones is the Debtor's sole member and manager. The Debtor operates a non-emergency medical transportation business and provides transportation services through payer and network relationships that include Modivcare Solutions LLC, CareCar Inc., and Medical Transportation Management, Inc. The Debtor uses a fleet of automobiles and approximately eight workers to provide transportation to medical appointments and related destinations.

### 1.2 Operating History.

The Debtor's filed Statement of Financial Affairs reports gross operating revenue of approximately $785,294 for 2024, $1,066,605 for 2025, and $444,563.65 from January 1, 2026 through the Petition Date. The Debtor's 2025 federal Schedule C reports net business profit of approximately $225,020. A preliminary profit-and-loss statement for January 1 through August 25, 2026 reports net income of approximately $107,974. These figures are historical and do not guarantee future results, but they demonstrate a substantial ongoing operating business.

**1.3 Circumstances Leading to the Filing.**

The Debtor financed numerous operating vehicles and also incurred merchant cash advance, purchased-receivables, line-of-credit, premium-finance, credit-card, and other short-term business obligations. The required daily, weekly, and monthly withdrawals associated with the short-term financing became incompatible with the Debtor's ordinary payroll, labor, fuel, insurance, repair, and operating obligations. One Nissan vehicle was repossessed before the Petition Date, and a Chevrolet Impala was declared a total loss with insurance proceeds pending. The Debtor filed this case to stop fragmented collection activity, preserve its transportation contracts and fleet, and restructure its obligations into payments that can be made from future operations.

**1.4 Reorganization Objective.**

The Debtor presently intends to retain all eleven operating vehicles identified in Classes 2 through 12, continue its transportation business, and pay all Allowed Claims in full. The Debtor proposes to pay the Allowed Secured Claims on retained vehicles over sixty months with interest at 8.50% per annum; to pay the Allowed Secured Claim of LiftFund, Inc. in Class 14 over sixty months without additional postpetition interest because the stated Claim already includes the full contractual purchased amount, discount, fees, or other contractual return; to pay all Allowed General Unsecured Claims, including Allowed unsecured MCA Claims and vehicle deficiencies, in full over no more than sixty months without postpetition interest; and to resolve any remaining disputed MCA, lien, assignment, and ownership issues through the claims-allowance and confirmation process.

**1.5 Compliance with 11 U.S.C. § 1190.**

This Article provides a brief history of the Debtor's business operations. Exhibit B contains preliminary projections regarding the Debtor's ability to make Plan payments. Exhibit C contains a hypothetical Chapter 7 liquidation analysis. Article VII provides for submission of

future earnings and other future income to the supervision and control of the Subchapter V Trustee to the extent necessary to execute the Plan.

**1.6 Early Filing and Later Reconciliation.**

This Plan is filed before expiration of the claims bar dates and before most creditors have filed proofs of claim. Amounts shown in this Plan are estimates derived from the Debtor's schedules, Proof of Claim No. 1, contracts presently available, and the Debtor's books. No scheduled or estimated amount is admitted merely because it appears in this Plan. The Debtor expects to amend the Plan as proofs of claim are filed and as collateral values, insurance proceeds, administrative expenses, and disputed MCA and lien issues are resolved.

## ARTICLE II
## DEFINITIONS AND RULES OF INTERPRETATION

**2.1 Administrative Claim.**

"Administrative Claim" means a Claim entitled to priority under §§ 503(b) or 507(a)(2), including allowed Professional Fee Claims and allowed fees and expenses of the Trustee.

**2.2 Allowed Claim.**

"Allowed Claim" means a Claim or portion of a Claim that (a) is deemed filed under § 1111(a) because it is scheduled as undisputed, noncontingent, and liquidated; (b) is timely filed under § 501 and is not subject to a pending objection; (c) is allowed by a Final Order; or (d) is allowed by written stipulation approved by the Court. An Allowed Claim does not include any amount disallowed under § 502, any amount paid or credited from another source, or any amount subject to a pending objection unless estimated for distribution purposes.

**2.3 Bankruptcy Code and Bankruptcy Rules.**

"Bankruptcy Code" means title 11 of the United States Code. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

**2.4 Claim and Interest.**

"Claim" and "Interest" have the meanings assigned by §§ 101(5) and 101(17), respectively.

**2.5 Confirmation Date and Confirmation Order.**

"Confirmation Date" means the date the Court enters the Confirmation Order. "Confirmation Order" means the order confirming this Plan.

**2.6 Consensual and Nonconsensual Confirmation.**

"Consensual Confirmation" means confirmation under § 1191(a). "Nonconsensual Confirmation" means confirmation under § 1191(b).

**2.7 Debtor and Reorganized Debtor.**

"Debtor" means RS, LLC before the Effective Date. "Reorganized Debtor" means RS, LLC on and after the Effective Date.

**2.8 Disbursing Agent.**

"Disbursing Agent" means the Reorganized Debtor. The Reorganized Debtor shall serve as Disbursing Agent whether the Plan is confirmed under § 1191(a) or § 1191(b). This Plan expressly provides otherwise for purposes of § 1194(b).

**2.9 Disputed Claim.**

"Disputed Claim" means a Claim that is scheduled as disputed, contingent, or unliquidated; is subject to an objection; is asserted in an amount or status different from the Debtor's position; or has not otherwise become an Allowed Claim.

**2.10 Effective Date.**

"Effective Date" means the first business day occurring on or after the date that is sixty days after entry of the Confirmation Order, unless the Confirmation Order fixes a later date.

**2.11 Final Order.**

"Final Order" means an order or judgment as to which the time to appeal has expired without an appeal, or that has been affirmed or otherwise become final, unless the Court orders otherwise.

**2.12 General Unsecured Claim.**

"General Unsecured Claim" means an Allowed nonpriority unsecured Claim, including an Allowed vehicle deficiency Claim and an Allowed unsecured MCA Claim.

**2.13 Initial Distribution Date.**

"Initial Distribution Date" means the fifteenth day of the first full calendar month after the Effective Date, but no later than thirty days after the Effective Date.

**2.14 MCA Claim.**

"MCA Claim" means any Claim or asserted ownership, lien, assignment, security, trust, setoff, recoupment, or other interest arising from an agreement described as a purchase of future receivables, future receipts, sales proceeds, payment intangibles, or similar revenue, including the asserted obligations of CFG Merchant Solutions, LLC and LiteFund Solutions LLC and any principal later identified behind a representative UCC filing.

**2.15 Petition Date and Plan Date.**

"Petition Date" means August 28, 2026. "Plan Date" means September 4, 2026.

**2.16 Plan, Plan Account, Plan Payment, and Plan Period.**

"Plan" means this Plan and all exhibits and amendments. "Plan Account" means a segregated debtor-in-possession or post-confirmation account or subaccount used by the Reorganized Debtor for Plan funding and distributions. "Plan Payment" means the minimum monthly payment of $9,500. "Plan Period" means the sixty-month period beginning on the Initial Distribution Date. The Reorganized Debtor may make additional payments or prepay the Plan without penalty.

**2.17 Priority Tax Claim.**

"Priority Tax Claim" means an Allowed Claim entitled to priority under § 507(a)(8).

**2.18 Professional Fee Claim.**

"Professional Fee Claim" means an Administrative Claim for compensation or reimbursement under §§ 327, 330, 331, 503(b), or 1103, to the extent allowed by the Court.

**2.19 Secured Claim.**

"Secured Claim" means an Allowed Claim secured by a valid, perfected, enforceable, and unavoidable lien, but only to the extent of the value of the creditor's interest in the estate's interest in the collateral under § 506(a).

**2.20 Trustee.**

"Trustee" means Christopher H. Meredith, the Subchapter V Trustee appointed in this case, or any successor appointed under § 1183.

**2.21 Rules of Interpretation.**

Unless otherwise stated, statutory references are to the Bankruptcy Code. Headings do not limit interpretation. The singular includes the plural and the plural includes the singular as context requires. A payment or act due on a Saturday, Sunday, or legal holiday is due on the next business day. If a specific Class treatment conflicts with a general provision, the specific Class treatment controls. The Confirmation Order controls over this Plan only to the extent it expressly states a modification or clarification.

## ARTICLE III
## UNCLASSIFIED CLAIMS

**3.1 Administrative Claims.**

Except as otherwise agreed by the holder or ordered by the Court, each Allowed Administrative Claim shall be paid in full in cash on the Effective Date or as soon thereafter as the Claim becomes Allowed. Professional Fee Claims shall be paid only after allowance by the Court. A professional may agree to receive payment from a retainer and in installments after

allowance. For feasibility purposes only, Exhibit A reserves up to $40,000 for combined Professional Fee Claims, Trustee fees, and other Administrative Claims through confirmation; the reserve is not an admission of the amount of any Claim.

**3.2 Subchapter V Trustee Fees and Expenses.**

Allowed fees and expenses of the Trustee are Administrative Claims. If the Plan is confirmed under § 1191(a), allowed Trustee fees shall be paid on the Effective Date or pursuant to an agreed or Court-approved schedule, and the Trustee shall file any final fee application on the schedule fixed by the Confirmation Order. If the Plan is confirmed under § 1191(b), allowed Trustee fees shall be paid periodically as agreed or ordered and shall be treated as necessary expenses of Plan administration.

**3.3 Priority Tax Claims.**

Each Allowed Priority Tax Claim shall be paid in full, with interest at the rate required by § 511, in regular installment payments beginning on the Initial Distribution Date and ending no later than August 28, 2031, unless the holder agrees to different treatment. No Priority Tax Claim is presently scheduled, but the Debtor reserves for any timely filed and Allowed Priority Tax Claim.

**3.4 Statutory Fees and Postpetition Obligations.**

All Court fees and other statutory charges applicable to this Subchapter V case shall be paid when due. The Debtor shall remain current on postpetition payroll obligations, trust-fund taxes, insurance premiums, and ordinary operating obligations. Nothing in this Plan authorizes payment of a prepetition Claim outside the treatment provided by this Plan or another Court order.

## ARTICLE IV
## CLASSIFICATION, IMPAIRMENT, AND VOTING

| Class | Description | Status |
|---|---|---|
| 1 | Other Priority Claims under § 507(a)(4)-(7), if any | Unimpaired |
| 2-12 | Allowed Secured Claims on eleven retained operating vehicles | Impaired |
| 13 | Ally Claim relating to total-loss 2019 Chevrolet Impala and insurance proceeds | Impaired |
| 14 | Secured Claim of LiftFund, Inc. | Impaired |
| 15 | General Unsecured Claims, including Allowed unsecured MCA Claims and deficiencies | Impaired |
| 16 | Membership Interest of Reginald Jones | Impaired |

**4.1 Classification Rules.**

A Claim is classified in a particular Class only to the extent it qualifies within that Class. A Claim may be divided among Classes to reflect secured, priority, and unsecured portions. Claims entitled to treatment under Article III are not classified. No Class designation is an admission that a Claim is valid, enforceable, secured, or entitled to the stated amount or priority.

**4.2 Voting.**

Each impaired Class entitled to vote shall vote separately. An unimpaired Class is conclusively presumed to accept the Plan under § 1126(f). A Class receiving no property is deemed to reject under § 1126(g). The Debtor seeks acceptance by all impaired Classes and Consensual Confirmation under § 1191(a), but requests Nonconsensual Confirmation under § 1191(b) if the requirements of that section are met.

**4.3 Effect of Failure to Object to Plan Treatment.**

To the extent this Plan states a proposed Claim amount, collateral value, Allowed Secured Claim amount, interest rate, payment term, or deficiency amount, that treatment shall control for confirmation and distributions unless the affected holder timely objects to confirmation and specifically identifies the disputed term. A timely filed proof of claim remains

subject to objection, credit, and the other provisions of this Plan. Nothing in this Section excuses any service required by the Bankruptcy Rules or an order of the Court.

## ARTICLE V
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 5.1 Class 1: Other Priority Claims.

Class 1 consists of Allowed Claims entitled to priority under § 507(a)(4), (5), (6), or (7), if any. Each Allowed Class 1 Claim shall be paid in full in cash on the Effective Date unless the holder agrees to different treatment. Class 1 is unimpaired. No Class 1 Claim is presently known.

### 5.2 Classes 2 Through 12: Retained Vehicle Secured Claims.

| Class | Creditor / Collateral | Est. Claim | Proposed Secured | Class 15 Deficiency | Monthly @ 8.50% |
|---|---|---|---|---|---|
| 2 | Ally Financial<br>2019 Chrysler Pacifica (VIN ending 8534) | $27,360.41 | $9,799.20 | $17,561.21 | $201.05 |
| 3 | Ally Capital / Ally Financial<br>2021 Chevrolet Malibu (VIN ending 2178) | $18,034.45 | $16,475.00 | $1,559.45 | $338.01 |
| 4 | Ally Financial<br>2021 Chevrolet Malibu (VIN ending 4864) | $20,880.21 | $13,406.50 | $7,473.71 | $275.05 |
| 5 | Ally Financial<br>2022 Chevrolet Malibu (VIN ending 4558) | $18,958.66 | $15,106.50 | $3,852.16 | $309.93 |
| 6 | Ally Financial<br>2022 Chevrolet Malibu (VIN ending 3815) | $19,696.74 | $15,106.50 | $4,590.24 | $309.93 |
| 7 | Ally Financial<br>2021 Chevrolet Malibu LT (VIN ending 7409) | $19,971.32 | $14,319.00 | $5,652.32 | $293.78 |
| 8 | Ally Financial<br>2020 Chevrolet Malibu (VIN ending 8263) | $20,124.86 | $11,124.00 | $9,000.86 | $228.23 |
| 9 | Chrysler Capital<br>2021 Chevrolet Malibu (VIN ending 0685) | $17,374.36 | $12,406.50 | $4,967.86 | $254.54 |
| 10 | Nissan Motor Acceptance Company<br>2023 Nissan Altima (VIN ending 3911) | $23,817.06 | $16,686.00 | $7,131.06 | $342.34 |
| 11 | Nissan Motor Acceptance Company<br>2021 Nissan Altima (VIN ending 4550) | $19,075.37 | $13,626.00 | $5,449.37 | $279.56 |
| 12 | Nissan Motor Acceptance Company<br>2024 Nissan Altima (VIN ending 6976) | $29,899.77 | $17,136.00 | $12,763.77 | $351.57 |
| **TOTAL** | **Eleven retained vehicles** | **$235,193.21** | **$155,191.20** | **$80,002.01** | **$3,183.99** |

**Proposed Amounts and Valuation.** The figures in the table are the Debtor's proposed Claim amounts and collateral values for Plan treatment. The table incorporates Proof of Claim No. 1 for the vehicle ending in VIN 2178. Unless the holder of a Claim in Classes 2 through 12

timely objects to confirmation and specifically disputes the estimated Claim amount, collateral value, proposed secured amount, or resulting deficiency, the amounts and values shown in the table shall control for confirmation, Plan distributions, and lien satisfaction. If a holder timely objects, the issue may be resolved by agreement or determined by the Court at or before confirmation. No amount shall be paid twice.

**Payment Terms.** The Debtor shall retain each vehicle. Beginning on the Initial Distribution Date, the holder of each Allowed Secured Claim in Classes 2 through 12 shall receive equal monthly installments amortized over sixty months at 8.50% per annum. The last payment may be adjusted to pay the Allowed Secured Claim in full. The aggregate estimated monthly payment for Classes 2 through 12 is $3,183.99.

**Deficiency Claims.** Any portion of an Allowed Claim exceeding the Allowed Secured Claim, including any deficiency determined after valuation, sale, surrender, or disposition of collateral, shall be treated in Class 15 and shall not receive duplicate payment.

**Lien Retention and Release.** Each holder shall retain its valid lien on its collateral until the Allowed Secured Claim is paid in full under the Plan or otherwise satisfied. Within fourteen days after satisfaction, the holder shall deliver the title and execute any release reasonably necessary to evidence termination of the lien.

**Credits and Insurance.** All postpetition adequate-protection payments, insurance proceeds, sale proceeds, and other credits received on account of a vehicle shall reduce the applicable Claim dollar-for-dollar. The Debtor shall maintain customary insurance and identify the lienholder as loss payee as required by the applicable policy and loan documents.

**Section 1111(b) Election.** If a holder timely makes a valid election under § 1111(b)(2), the treatment of that Class shall be adjusted as required by the Bankruptcy Code, stipulation, or further order, and the Debtor may modify this Plan and the Plan Payment accordingly.

**Default.** Before exercising remedies based on a default under the confirmed Plan, the holder shall give written notice to the Reorganized Debtor, Debtor's counsel, and the Trustee. The Reorganized Debtor shall have fourteen days to cure a monetary default. Any relief from the automatic stay or other Court-supervised restriction shall require further order unless the Confirmation Order expressly provides otherwise.

Each of Classes 2 through 12 is impaired.

**5.3 Class 13: Total-Loss 2019 Chevrolet Impala / Ally Claim.**

Class 13 consists of Ally's Claim, presently estimated at $21,730.76, relating to the 2019 Chevrolet Impala with VIN ending 8560, which was declared a total loss on June 2, 2026. Ally shall retain any valid lien on insurance proceeds. The Debtor may authorize the insurer to pay the Allowed Secured Claim directly. Insurance proceeds and all other recoveries shall be credited dollar-for-dollar. Any Allowed deficiency remaining after application of insurance proceeds shall be treated in Class 15. Any surplus proceeds shall remain property of the estate. Class 13 is impaired.

**5.4 Class 14: Secured Claim of LiftFund, Inc.**

Class 14 consists of the secured Claim of LiftFund, Inc., presently estimated at $18,977.84, secured by its lien on accounts, receivables, payment rights, general intangibles, equipment, and proceeds. For purposes of Plan treatment, the Class 14 Claim is treated as fully secured in the amount of its Allowed Claim. Unless LiftFund timely objects to confirmation, the amount, secured status, interest rate, and payment terms stated in this Section shall control.

Beginning on the Initial Distribution Date, the Allowed Class 14 Claim shall be paid in sixty equal monthly installments of approximately $316.30, with the final installment adjusted to pay the Allowed Claim in full. No additional postpetition interest shall accrue or be paid because the stated Claim amount already includes the full contractual purchased amount, discount, factor,

fees, or other contractual return. All collections, setoffs, proceeds, adequate-protection payments, and other payments shall be credited dollar-for-dollar. LiftFund shall retain its lien until the Allowed Class 14 Claim is paid in full. Upon full payment, the lien and all related UCC filings shall be deemed fully satisfied and released, and LiftFund shall file any required termination or release within fourteen days after written request. Class 14 is impaired.

**5.5 Class 15: General Unsecured Claims.**

Class 15 consists of all Allowed General Unsecured Claims, including Allowed unsecured MCA Claims, Allowed vehicle deficiency Claims, and any unsecured portion of a Claim otherwise addressed in another Class. Based on the schedules and present assumptions, the Debtor estimates core Class 15 Claims of approximately $312,294.20, consisting of $232,292.19 of scheduled nonpriority unsecured Claims and $80,002.01 of estimated deficiencies on the eleven retained vehicles. For a conservative high-side model, Exhibit A adds up to $21,730.76 if the total-loss Impala produces no insurance credit, resulting in a maximum modeled Class 15 pool of $334,024.96. These amounts are estimates only and shall not result in duplicate recovery.

Each holder of an Allowed Class 15 Claim shall receive 100% of the Allowed Claim, without postpetition interest, in pro rata monthly distributions beginning on the Initial Distribution Date and completed no later than the sixtieth monthly distribution. Based on the high-side estimate, the level monthly Class 15 distribution would be approximately $5,567.08. Actual monthly distributions may vary as Claims are Allowed, objected to, resolved, or paid from other sources, but the aggregate distribution shall equal 100% of each Allowed Class 15 Claim unless the holder agrees otherwise.

No default rate, penalty, collection charge, unmatured interest, unearned factor charge, unearned discount, or similar amount shall be paid unless included in an Allowed Claim after

objection, stipulation approved by the Court, or Final Order. A creditor that receives payment from a guarantor, account debtor, processor, insurer, collateral, or other source shall promptly credit the amount against its Claim and Plan balance. Class 15 is impaired.

**5.6 Class 16: Membership Interest of Reginald Jones.**

Class 16 consists of the 100% membership Interest held by Reginald Jones. Mr. Jones shall retain his membership Interest and continue to manage the Reorganized Debtor, subject to this Plan and the Confirmation Order. No dividend, redemption, distribution, or other payment shall be made on account of the Class 16 Interest until all Allowed Claims and Plan obligations have been paid in full. Compensation for actual postpetition services is governed exclusively by Section 7.7 and is not a distribution on account of the Interest. Class 16 is impaired.

## ARTICLE VI
## MCA AND RECEIVABLES-PURCHASE CLAIMS

**6.1 Purpose of Special Provisions.**

Except for the separately classified secured Claim of LiftFund in Class 14, MCA Claims are included in Class 15 for voting and distribution purposes to the extent they are Claims and are Allowed as unsecured. They are addressed separately in this Article only because they present disputed ownership, lien, reconciliation, guaranty, UCC, and claim-allowance issues. This separate discussion does not create a separate voting class or different economic treatment for unsecured MCA Claims.

**6.2 Known MCA and Representative UCC Matters.**

The Debtor presently identifies CFG Merchant Solutions, LLC and LiteFund Solutions LLC as parties to agreements described as purchases of future receipts. UCC filings also name C T Corporation System and First Corporate Solutions as representatives without identifying the underlying principal in the filings available to the Debtor. Fundbox, Inc. and Giggle, LLC are

scheduled as unsecured financing obligations, but the Debtor does not concede that they are MCA transactions without review of the complete agreements and payment histories.

**6.3 Unsecured MCA Treatment.**

Each MCA Claim finally Allowed as a nonpriority unsecured Claim shall be treated in Class 15 and paid 100% without postpetition interest no later than the sixtieth monthly distribution. The Debtor's proposal to pay the Allowed Claim in full does not admit the scheduled amount, the enforceability of any factor charge, discount, fee, default charge, or collection cost, or the characterization of the transaction as a loan or sale.

**6.4 Secured Status and Required Proceedings.**

Except for the secured treatment expressly provided to LiftFund in Class 14, no MCA claimant shall receive secured treatment except to the extent allowed through the claims-allowance process, agreement, or further order. Any dispute concerning ownership or the validity, priority, or extent of a lien or other property interest may be resolved under Bankruptcy Rule 7001 or another procedure approved by the Court. The Debtor reserves the right to modify this Plan to conform to any ruling or agreement.

**6.5 Alternative True-Sale Treatment.**

If a Final Order determines that an MCA claimant purchased a property interest rather than holding a Claim, the claimant's rights shall be limited to the specifically identified prepetition receivables or identifiable proceeds described in that Final Order. The claimant shall have no ownership interest in postpetition receivables generated solely by postpetition transportation services except to the extent a Final Order provides otherwise. Any Allowed breach, deficiency, or other Claim shall be classified according to its legal status.

**6.6 No Double Recovery.**

A claimant may not recover more than the total amount finally determined to be owing or owned. Every payment, debit, sweep, collection from an account debtor, receipt from a

guarantor, realization on collateral, Plan distribution, or other recovery shall be credited dollar-for-dollar. The claimant shall provide a current accounting upon request by the Debtor, Trustee, or United States Trustee.

**6.7 Satisfaction of Liens, Assignments, and UCC Filings.**

Upon payment of all amounts to which an MCA claimant or other UCC claimant is entitled under the confirmed Plan, completion of any property-interest treatment fixed by Final Order, and resolution of related objections and causes of action, every lien, security interest, assignment, power of attorney, payment direction, lockbox instruction, and UCC financing statement securing or evidencing that obligation shall be deemed fully satisfied and released. Within fourteen days after written request, the claimant shall deliver and file all UCC-3 termination statements and other releases reasonably requested. If the claimant fails to do so, the Reorganized Debtor may seek an order compelling execution or may file a termination statement to the extent authorized by applicable law and the Confirmation Order. Acceptance of the Plan constitutes consent to this provision.

**6.8 Reservation of Objections and Equitable Subordination.**

Nothing in this Plan constitutes allowance of, or waiver of, any objection, counterclaim, avoidance claim, recharacterization claim, usury or illegality defense, reconciliation right, fraud or misrepresentation claim, equitable-subordination claim under § 510(c), § 552 defense, tracing objection, setoff or recoupment defense, surcharge right, or other defense concerning an MCA Claim. The Debtor does not presently seek to equitably subordinate any Claim solely through this Plan. The Debtor may seek subordination or other relief before confirmation by amendment, claim objection, adversary proceeding, motion, or such procedure as the Court directs if the evidence supports it.

**6.9 No Release of Nondebtor Guarantors.**

Nothing in this Plan releases, discharges, or enjoins a Claim against Reginald Jones or another nondebtor guarantor except to the extent the holder expressly agrees in writing or applicable law otherwise provides. Any recovery from a nondebtor shall reduce the creditor's Claim and Plan balance under Section 6.6.

## ARTICLE VII
## PLAN FUNDING, DISTRIBUTIONS, AND OPERATIONS

**7.1 Minimum Monthly Plan Payment.**

Beginning on the Initial Distribution Date and continuing on the same day of each month during the Plan Period, the Reorganized Debtor shall deposit and disburse not less than $9,500 through the Plan Account. The minimum aggregate funding from regular Plan Payments is $570,000. The Plan Payment is a minimum and not a cap. The Reorganized Debtor shall contribute additional funds if necessary to pay all Allowed Claims and Plan obligations in full.

**7.2 Plan Account and Debtor Disbursements.**

The Reorganized Debtor shall maintain the Plan Account and shall serve as the sole Disbursing Agent whether the Plan is confirmed under § 1191(a) or § 1191(b). This Plan expressly provides otherwise for purposes of § 1194(b). The Trustee shall not receive or disburse Plan payments unless the Court later orders otherwise. The Reorganized Debtor shall make all distributions directly to creditors. Future earnings and income necessary to execute the Plan shall remain subject to the Trustee's supervision and control only to the extent required by § 1190(2) and the Confirmation Order.

**7.3 Distribution Waterfall.**

The Reorganized Debtor, as Disbursing Agent, shall apply Plan funds in the following order, subject to the specific treatment of each Claim and the Confirmation Order: first, Allowed Administrative Claims and Trustee fees then due under an agreed or Court-approved schedule; second, amounts due under Classes 2 through 14 in accordance with their specific treatment;

third, installments due on Allowed Priority Tax Claims; fourth, pro rata distributions to Allowed Class 15 Claims; and fifth, reserves or accelerated distributions needed to complete the Plan. Payments made directly by the Reorganized Debtor constitute Plan distributions.

**7.4 Preliminary Funding Reconciliation.**

At the present high-side estimates, the eleven retained vehicle Classes require aggregate payments of approximately $191,039.11 over sixty months, including interest; Class 14 requires $18,977.84 over sixty months without additional interest; and Class 15 requires up to $334,024.96 without interest. The combined modeled Class payments are approximately $544,041.91. Regular Plan Payments total $570,000.00, leaving an estimated $25,958.09 to address Administrative Claims, Priority Tax Claims, Trustee fees, claim changes, and rounding. Exhibit A summarizes the calculation. If actual Allowed Claims or expenses exceed the model, the Debtor shall increase the Plan Payment or contribute additional funds as necessary, subject to the owner-compensation reduction in Section 7.7.

**7.5 Nonconsensual Disposable-Income Commitment.**

If the Plan is confirmed under § 1191(b), the Debtor commits all projected disposable income, as defined by § 1191(d), received during the sixty-month Plan Period to payments under the Plan. The Reorganized Debtor shall remain the Disbursing Agent and shall make all Plan distributions directly. The Trustee shall not serve as Disbursing Agent. Future earnings and income shall remain subject to the Trustee's supervision and control only to the extent necessary to execute the Plan under § 1190(2) and the Confirmation Order.

**7.6 Other Funding.**

Additional Plan funding may include: (a) net proceeds of any nonordinary-course asset sale after payment of valid liens and Court-approved costs; (b) insurance proceeds remaining after satisfaction of valid liens and reasonable replacement needs; (c) recoveries on retained causes of action to the extent not required for operating expenses or subject to a valid lien; and

(d) additional operating income necessary to pay all Allowed Claims and Plan obligations in full. The Debtor may prepay the Plan without penalty.

**7.7 Owner-Manager Compensation; No Equity Distribution.**

Reginald Jones may receive compensation for actual postpetition management and operating services in an amount not exceeding $19,610 per month. This amount is a ceiling, not a guaranteed draw or distribution. No payment may be made on account of his ownership Interest, and the Debtor shall not directly pay personal expenses except properly documented business reimbursements. Compensation shall be documented, reported in monthly operating reports, and treated consistently for payroll and tax purposes on advice of the Debtor's accountant.

The compensation shall be reduced automatically, dollar-for-dollar and without further order, to the extent necessary for the Debtor to remain current on the Plan Payment, payroll and trust-fund taxes, vehicle insurance, ordinary operating expenses, Trustee fees, and agreed or Court-ordered Administrative Claim payments. The compensation may not be increased above $19,610 per month without at least twenty-one days' notice to the Trustee, United States Trustee, and parties requesting notice and further order of the Court. The Trustee, United States Trustee, or a party in interest may challenge the reasonableness of the compensation.

**7.8 Management and Continued Operations.**

Reginald Jones shall remain the sole member and manager of the Reorganized Debtor. The Reorganized Debtor shall continue operating the transportation business, maintain required licenses and insurance, use appropriate debtor-in-possession and post-confirmation accounts, maintain books and records, file tax returns and reports, and pay all postpetition obligations when due. The Reorganized Debtor may replace an operating vehicle in the ordinary course using unencumbered funds or financing approved by the Court, provided that Plan payments are not impaired.

**7.9 Claims-Bar-Date True-Up and Plan Adjustment.**

Within thirty days after the later of the applicable general and governmental claims bar dates, the Debtor shall prepare and provide to the Trustee and United States Trustee an updated claims reconciliation identifying each filed, deemed-filed, disputed, secured, priority, administrative, and unsecured Claim. Before confirmation, the Debtor may modify the Plan to reflect the reconciliation. After confirmation, the Plan Payment may be increased administratively to the extent necessary to pay Allowed Claims in full; it may not be reduced below $9,500 without further order after notice. No true-up is an admission or waiver of an objection.

**7.10 Feasibility and Projections.**

Exhibit B presents preliminary five-year projections. Plan Year 1 assumes average monthly operating receipts of $85,000, which is below the Debtor's 2025 average monthly gross revenue, and includes a working-capital and repair contingency above the presently filed cash-collateral budget. The projections show positive cash flow after the maximum owner compensation and the minimum Plan Payment. If receipts remain at the $81,116 monthly level used in the cash-collateral budget, the automatic compensation reduction in Section 7.7 preserves the Plan Payment and a reasonable operating cushion. The Debtor shall supplement these projections with actual postpetition results before confirmation.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1 Assumption of Provider Agreements.**

On the Effective Date, the Reorganized Debtor shall assume the transportation and provider agreements identified in Exhibit E, subject to § 365 and any anti-assignment or regulatory restrictions that remain enforceable. The Debtor presently estimates no monetary cure

amount. A counterparty asserting a cure Claim must file it by the deadline fixed in the notice of confirmation or another Court order, and any dispute shall be resolved by the Court.

**8.2 Other Contracts and Leases.**

No executory contract or unexpired lease not identified in Exhibit E is assumed or rejected solely by this Plan unless it is identified in a Plan supplement, stipulation, or Confirmation Order. The Debtor reserves the right before confirmation to assume, assume and assign, or reject any executory contract or unexpired lease. Insurance policies, bank-account agreements, and ordinary-course service arrangements shall continue according to their terms unless separately rejected or terminated.

**8.3 Rejection Claims.**

A Claim arising from rejection must be filed by the deadline fixed in the Confirmation Order or other applicable notice. An Allowed rejection Claim shall be treated in Class 15 unless entitled to another classification or priority.

## ARTICLE IX
## CLAIMS ADMINISTRATION AND RETAINED CAUSES OF ACTION

**9.1 Claims Objections.**

The Reorganized Debtor and Trustee, to the extent authorized by law or the Confirmation Order, may object to Claims. Unless extended by the Court, objections shall be filed within 180 days after the Effective Date. The absence of an objection before confirmation does not constitute allowance or waiver except as expressly provided by the Confirmation Order.

**9.2 Disputed Claims and Reserves.**

No distribution is required on a Disputed Claim until it becomes an Allowed Claim. The Disbursing Agent shall maintain a bookkeeping reserve based on the amount estimated by the Court under § 502(c), agreed by the parties, or, absent either, asserted in a timely proof of claim, less amounts subject to an entered valuation or disallowance order. When a Claim becomes

Allowed, missed distributions shall be paid over a reasonable catch-up period without interest unless otherwise ordered.

**9.3 Setoff and Recoupment.**

The Debtor and Reorganized Debtor preserve all rights of setoff and recoupment, subject to applicable law. Nothing in this Plan expands a creditor's setoff or recoupment rights or waives the automatic stay.

**9.4 Retained Claims and Causes of Action.**

Except as expressly released by a Final Order, the Debtor and Reorganized Debtor retain and may enforce all claims and causes of action, including: objections to Claims; avoidance and recovery actions under Chapter 5; claims concerning liens, UCC filings, assignments, receivables, payment directions, sweeps, and ownership interests; MCA recharacterization, reconciliation, usury, illegality, fraud, misrepresentation, breach, turnover, damages, and equitable-subordination claims; claims against insiders and prepetition financing parties; insurance claims; and rights under §§ 506(c), 510, 542, 544, 547, 548, 549, 550, 551, 552, 553, and 558. Potential defendants include CFG Merchant Solutions, LiteFund Solutions, LiftFund, Fundbox, Giggle, the principals represented by C T Corporation System and First Corporate Solutions, vehicle lenders, account processors, banks, insurers, insiders, and any transferee or recipient identified through investigation. No value is presently assigned to these unliquidated rights in the feasibility model.

**9.5 Insurance and Other Third-Party Recoveries.**

The Debtor retains all rights to insurance proceeds, refunds, recoveries, and causes of action, subject to valid liens and loss-payee rights. Any creditor receiving proceeds shall account for and credit them against its Claim. No creditor may receive more than its Allowed Claim or other property interest fixed by Final Order.

## ARTICLE X
## CONFIRMATION AND EFFECT OF THE PLAN

**10.1 Requested Confirmation.**

The Debtor requests Consensual Confirmation under § 1191(a). If one or more impaired Classes reject, the Debtor alternatively requests Nonconsensual Confirmation under § 1191(b), provided that the applicable requirements of §§ 1129(a) and 1191 are satisfied. The Plan may be modified before confirmation under § 1193(a).

**10.2 Best Interests of Creditors.**

The Plan proposes payment of 100% of all Allowed General Unsecured Claims, without postpetition interest. Exhibit C estimates that holders of General Unsecured Claims would receive no more than approximately 8.2% in a hypothetical Chapter 7 liquidation before any Priority Claims, and potentially no distribution if asserted blanket liens encumber cash and accounts receivable. The Plan therefore provides each impaired accepting holder at least as much as it would receive in Chapter 7.

**10.3 Vesting of Property.**

If the Plan is confirmed under § 1191(a), property of the estate shall vest in the Reorganized Debtor on the Effective Date, free and clear of Claims and Interests except as provided by the Plan, the Confirmation Order, or a valid retained lien. If the Plan is confirmed under § 1191(b), property of the estate shall include property and earnings described in § 1186 and shall remain subject to the Plan and Court jurisdiction until discharge, dismissal, conversion, closing, or further order.

**10.4 Binding Effect.**

Upon confirmation, this Plan and the Confirmation Order shall bind the Debtor, Reorganized Debtor, creditors, equity holder, and all parties in interest under § 1141(a), as made applicable by Subchapter V, whether or not a Claim is impaired and whether or not the holder accepted the Plan.

**10.5 Preservation and Satisfaction of Liens.**

Except as expressly modified, avoided, released, or satisfied, a valid lien shall survive confirmation and remain attached only to the property and proceeds within its allowed scope. Upon full payment or other satisfaction of the treatment provided for the related Claim or property interest, the lien shall be released as provided in this Plan. No Plan provision validates a lien or ownership interest that is otherwise invalid, unperfected, avoidable, or unenforceable.

**10.6 Discharge if Confirmed Under 11 U.S.C. § 1191(a).**

If the Plan is confirmed under § 1191(a), the Debtor shall receive the discharge provided by § 1141(d)(1), subject to § 1141(d)(6), the Plan, and the Confirmation Order. The timing or scope of discharge shall not alter the obligation to complete all Plan payments.

**10.7 Discharge if Confirmed Under 11 U.S.C. § 1191(b).**

If the Plan is confirmed under § 1191(b), the Debtor shall receive a discharge only after completion of the payments due during the sixty-month period and as otherwise provided by § 1192. The discharge shall be subject to the exceptions stated in § 1192(1) and (2) and other applicable law.

**10.8 Injunction.**

Except as otherwise provided by the Plan or Confirmation Order, confirmation and discharge shall operate as an injunction only to the extent provided by applicable bankruptcy law. A holder may enforce rights expressly preserved under the Plan and may seek relief from the Court after an uncured default. No person may use a Claim against a nondebtor as a means to collect from the Debtor, the Reorganized Debtor, or property protected by the automatic stay, Plan, or discharge injunction.

**10.9 No Third-Party Release.**

The Plan grants no release, discharge, or injunction in favor of Reginald Jones or another nondebtor. Nothing prevents a creditor from pursuing a valid guaranty or other direct Claim

against a nondebtor, subject to applicable law and the requirement to credit all recoveries against the related Claim.

## ARTICLE XI
## SUBCHAPTER V TRUSTEE AND CASE CLOSING

**11.1 Trustee Duties and Termination.**

The Trustee shall perform the duties required by the Bankruptcy Code and the Confirmation Order. If the Plan is confirmed under § 1191(a), the Trustee's service shall terminate when the Plan is substantially consummated, unless the Court orders otherwise. If the Plan is confirmed under § 1191(b), the Trustee shall continue to perform the duties required by applicable law and the Confirmation Order, but the Reorganized Debtor shall remain the Disbursing Agent and the Trustee shall not make Plan distributions unless the Court later orders otherwise.

**11.2 Trustee Fee Applications.**

The Trustee shall file fee applications as required by §§ 330 and 331 and the Confirmation Order. In a consensual case, the Confirmation Order should establish a deadline for a final fee application after the notice of substantial consummation. In a nonconsensual case, the Trustee may seek interim compensation and shall file a final application after completion, dismissal, conversion, or further order. Allowed fees and expenses shall be paid as Administrative Claims.

**11.3 Notice of Effective Date and Substantial Consummation.**

Within seven days after the Effective Date, the Debtor shall file and serve a Notice of Effective Date. Not later than fourteen days after substantial consummation, the Debtor shall file and serve the notice required by § 1183(c)(2) on the Trustee, United States Trustee, and parties in interest. The Debtor shall seek a final decree when administration is complete and the case is ready to close.

## ARTICLE XII
## DEFAULT, REMEDIES, AND PROTECTION OF CREDITORS

**12.1 Plan Default.**

A material default occurs if the Reorganized Debtor fails to make a required Plan Payment, fails to maintain required insurance on retained collateral, fails to pay postpetition payroll or trust-fund taxes when due, makes a prohibited equity distribution, or materially breaches another Plan provision and does not timely cure.

**12.2 Notice and Opportunity to Cure.**

Except where a specific Class provides otherwise, a party asserting default shall give written notice to the Reorganized Debtor, Debtor's counsel, and the Trustee. The Reorganized Debtor shall have fourteen days to cure a monetary default and thirty days to cure a nonmonetary default, provided that if a nonmonetary default cannot reasonably be cured within thirty days, cure is timely if commenced within that period and diligently completed.

**12.3 Remedies.**

If a material default is not cured, the affected party may request appropriate relief from the Court, including enforcement, modification, dismissal, conversion, appointment or reappointment of a trustee, relief from stay, or liquidation of collateral. Except as expressly permitted by the Confirmation Order or applicable law after termination of the stay, no creditor may exercise extra-judicial remedies against estate property or property governed by the Plan without required Court authority.

**12.4 Feasibility Protection.**

If the Debtor cannot make the required payments from operations and compensation reductions, the Debtor shall promptly confer with the Trustee and United States Trustee and may seek a Plan modification, sale or surrender of nonessential vehicles, or other relief. The Debtor's current decision is to retain all operating vehicles; that decision may be modified before confirmation as claims, values, and route needs are reconciled.

## ARTICLE XIII
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction to: determine the allowance, priority, classification, and secured status of Claims; value collateral; resolve lien and ownership disputes; enforce MCA and UCC treatment; adjudicate retained causes of action; approve compensation; resolve executory-contract and cure disputes; enforce Plan payments and defaults; interpret and implement the Plan and Confirmation Order; consider modifications; determine discharge issues; approve sales; compel releases and UCC terminations; and enter a final decree and all other orders necessary to consummate the Plan.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

**14.1 Modification.**

The Debtor may modify this Plan before or after confirmation to the extent permitted by § 1193. A preconfirmation modification becomes the Plan upon filing, subject to the Court's authority to require additional notice, disclosure, or voting.

**14.2 No Admission.**

The Plan is a settlement proposal and not an admission of liability, amount, priority, secured status, collateral value, ownership interest, or wrongdoing. If the Plan is not confirmed or a provision is not approved, the provision shall not be used as an admission against the Debtor or another party except as otherwise required by law.

**14.3 Governing Law.**

Federal bankruptcy law governs this Plan. Mississippi law governs issues not preempted or otherwise governed by applicable nonbankruptcy law, except where the controlling agreement or a Final Order provides another governing law.

**14.4 Severability.**

If a Plan provision is held invalid or unenforceable, the Court may modify or sever the provision without invalidating the remainder, provided the modification does not materially and adversely alter a holder's treatment without required notice and opportunity to vote or object.

**14.5 Notices.**

Notices to the Debtor or Reorganized Debtor shall be sent to The Rollins Law Firm, PLLC, P.O. Box 13767, Jackson, Mississippi 39236, email trollins@therollinsfirm.com, and to any additional address designated by filed notice. Notices to the Trustee shall be sent to Christopher H. Meredith, Copeland, Cook, Taylor & Bush, P.A., P.O. Box 6020, Ridgeland, Mississippi 39158, email cmeredith_trustee@cctb.com, or any replacement address filed in the case.

**14.6 Tax Treatment.**

The Debtor, Reorganized Debtor, and each holder of a Claim shall report Plan payments for tax purposes in accordance with applicable law. The Plan does not provide tax advice to any holder.

**14.7 Plan Exhibits and Supplements.**

The exhibits are part of the Plan and may be updated before confirmation, subject to any notice, disclosure, and voting requirements ordered by the Court.

DATED: September 3, 2026. Respectfully submitted,

**RS, LLC,**
**Debtor and Debtor-in-Possession**
BY: /s/ Thomas C. Rollins, Jr.
Thomas C. Rollins, Jr. (MSBN 103469)
THE ROLLINS LAW FIRM, PLLC
P.O. Box 13767, Jackson, Mississippi 39236
Telephone: (601) 500-5533 | Email:
trollins@therollinsfirm.com
Counsel for the Debtor-in-Possession

# EXHIBIT A

## PRELIMINARY PLAN FUNDING AND CLASS PAYMENT SUMMARY

This exhibit uses scheduled amounts, Proof of Claim No. 1, and current working collateral values. It is intentionally conservative and will be updated after the claims bar dates, insurance proceeds, valuation proceedings, stipulations, and claim objections.

| Component | Calculation | 60-Month Amount | Note |
|---|---|---|---|
| Regular Plan Payments | $9,500.00 x 60 | $570,000.00 | Minimum funding; additional Plan payments may increase this amount. |
| Classes 2-12 retained vehicles | $155,191.20 principal at 8.50% | $191,039.11 | Includes approximately $35,847.91 interest. |
| Core Class 15 Claims | $312,294.20 | $312,294.20 | Scheduled unsecured Claims plus retained-vehicle deficiencies. |
| Class 14 LiftFund secured claim | $18,977.84 principal at 0% | $18,977.84 | $316.30 per month; lien retained until paid. |
| Conditional Impala deficiency | Up to $21,730.76 | $21,730.76 | Reduced by insurance and other credits. |
| Maximum modeled Class 15 Claims | $334,024.96 | $334,024.96 | 100% at 0% postpetition interest. |
| Maximum modeled class payments | | $544,041.91 | Vehicle, Class 14, and maximum Class 15 payments. |
| Preliminary funding cushion | | $25,958.09 | Available before additional funding for Administrative, Trustee, Priority, and claim changes. |

## Monthly Baseline.

| Item | Monthly Amount |
|---|---|
| Retained vehicle Classes 2-12 | $3,183.99 |
| Class 14 LiftFund secured claim | $316.30 |
| Maximum modeled Class 15 distribution | $5,567.08 |
| Base modeled class payment | $9,067.37 |
| **Minimum monthly Plan Payment** | **$9,500.00** |
| **Preliminary monthly difference** | **$432.63** |

# EXHIBIT B

## PRELIMINARY FIVE-YEAR OPERATING PROJECTIONS

The projections are preliminary and are not a guarantee. Plan Year 1 assumes average monthly receipts of $85,000 and core operating expenses of $53,000, which includes a working-capital and major-repair contingency above the current cash-collateral budget. Receipts and core operating expenses increase by 2% annually. Owner-manager compensation is shown at the maximum $19,610 per month, but is subject to automatic reduction under the Plan. The minimum Plan Payment is $9,500 per month.

| Plan Year | Operating Receipts | Core Operating Expenses | Maximum Owner Compensation | Minimum Plan Payments | Projected Cushion |
|---|---|---|---|---|---|
| Plan Year 1 | $1,020,000.00 | $636,000.00 | $235,320.00 | $114,000.00 | $34,680.00 |
| Plan Year 2 | $1,040,400.00 | $648,720.00 | $235,320.00 | $114,000.00 | $42,360.00 |
| Plan Year 3 | $1,061,208.00 | $661,694.40 | $235,320.00 | $114,000.00 | $50,193.60 |
| Plan Year 4 | $1,082,432.16 | $674,928.29 | $235,320.00 | $114,000.00 | $58,183.87 |
| Plan Year 5 | $1,104,080.80 | $688,426.85 | $235,320.00 | $114,000.00 | $66,333.95 |

**Revenue Support and Stress Test.**

| Scenario | Amount | Comment |
|---|---|---|
| 2025 historical average gross receipts | $88,883 per month | Based on approximately $1,066,605 annual gross revenue. |
| Plan Year 1 base projection | $85,000 per month | Below the 2025 historical average. |
| Current cash-collateral budget receipts | $81,116 per month | At this level, the compensation cap is reduced as necessary. |
| Illustrative reduced compensation at $81,116 receipts | $15,726 per month | Preserves $9,500 Plan Payment and $2,890 operating cushion if core expenses are $53,000. |

The Debtor shall file updated projections and actual postpetition results before confirmation. If actual results are materially below projection, the Debtor shall reduce owner compensation, reduce nonessential expenses, surrender or sell nonessential vehicles, increase revenue, or modify the Plan before seeking confirmation.

# EXHIBIT C

## HYPOTHETICAL CHAPTER 7 LIQUIDATION ANALYSIS

This analysis estimates the distribution that might be available if the Debtor were liquidated under Chapter 7 on the Effective Date. It does not determine lien validity or collateral value and excludes unliquidated causes of action for which no reliable value presently exists.

| Asset | Scheduled / Face Value | Recovery Assumption | Estimated Gross Recovery | Comment |
|---|---|---|---|---|
| Cash | $19,167.71 | 100% | $19,167.71 | May be subject to asserted blanket liens and needed wind-down costs. |
| Accounts receivable | $36,000.00 | 80% | $28,800.00 | Collection discount; may be subject to asserted liens/ownership claims. |
| Computer and tablet | $350.00 | 25% | $87.50 | Nominal liquidation value. |
| Eleven operating vehicles | $152,122.70 | 75% | $114,092.03 | Secured debt exceeds estimated liquidation proceeds; no equity. |
| Provider relationships / goodwill | $0.00 scheduled | 0% | $0.00 | No reliable standalone liquidation value. |
| Impala insurance proceeds | Unknown | N/A | $0.00 to estate | Assumed payable to lienholder; any surplus would increase recovery. |
| Retained causes of action | Unknown | N/A | $0.00 | No reliable value assigned; costs and defenses unknown. |

| Liquidation Summary | Amount / Percentage |
|---|---|
| Maximum potentially unencumbered gross recovery | $48,055.21 |
| Estimated Chapter 7 trustee commission under § 326(a) | ($5,555.52) |
| Estimated legal, accounting, storage, and wind-down costs | ($15,000.00) |
| Maximum estimated net before Priority Claims | $27,499.69 |
| Maximum estimated Class 15 percentage | 8.2% |
| Likely recovery if blanket liens encumber cash and A/R | 0% |
| **Plan recovery on Allowed Class 15 Claims** | **100%** |

Because the Plan provides 100% payment of Allowed General Unsecured Claims, the precise Chapter 7 percentage does not affect the proposed treatment, but the analysis demonstrates a substantial improvement over liquidation.

# EXHIBIT D

## PRELIMINARY GENERAL UNSECURED CLAIM SCHEDULE

The schedule is for planning only. A Claim is paid only if it becomes Allowed. All recoveries and payments from other sources reduce the Claim. Vehicle deficiency amounts are estimates based on current values and remain subject to § 506 and Bankruptcy Rule 3012.

| Creditor | Type | Estimated Amount | Status |
|---|---|---|---|
| American Express | Credit card | $2,612.34 | Scheduled |
| American Express | Credit card | $4,859.08 | Scheduled |
| CFG Merchant Solutions, LLC | MCA / future receipts | $10,561.00 | Object / reconcile |
| First Insurance Funding | Premium financing | $14,941.78 | Review status and credits |
| Fundbox, Inc. | Business financing | $31,819.69 | Agreement / claim review |
| Giggle, LLC | Business financing | $2,730.96 | Agreement / claim review |
| JPMorgan Chase | Credit card | $11,755.93 | Scheduled |
| JPMorgan Chase | Credit card | $9,955.95 | Scheduled |
| LiteFund Solutions LLC | MCA / future receipts | $30,250.00 | Object / reconcile |
| Members Exchange FCU | Line of credit | $39,840.52 | Scheduled |
| Members Exchange FCU | Credit account | $17,596.89 | Scheduled |
| Mutual Credit Union | Credit account | $9,064.87 | Scheduled |
| NMAC | Repossessed-vehicle deficiency | $18,416.67 | Disputed / unliquidated |
| U.S. Small Business Administration | EIDL / business loan | $21,923.54 | Scheduled |
| WEX Bank | Fuel credit | $5,962.97 | Scheduled |
| **SUBTOTAL** | **Filed Schedule E/F** | **$232,292.19** | |

## Estimated Deficiencies on Retained Vehicles.

| Source Class | Creditor | Vehicle / VIN4 | Estimated Deficiency |
|---|---|---|---|
| Class 2 | Ally Financial | 2019 Chrysler Pacifica / 8534 | $17,561.21 |
| Class 3 | Ally Capital / Ally Financial | 2021 Chevrolet Malibu / 2178 | $1,559.45 |
| Class 4 | Ally Financial | 2021 Chevrolet Malibu / 4864 | $7,473.71 |
| Class 5 | Ally Financial | 2022 Chevrolet Malibu / 4558 | $3,852.16 |
| Class 6 | Ally Financial | 2022 Chevrolet Malibu / 3815 | $4,590.24 |
| Class 7 | Ally Financial | 2021 Chevrolet Malibu LT / 7409 | $5,652.32 |
| Class 8 | Ally Financial | 2020 Chevrolet Malibu / 8263 | $9,000.86 |
| Class 9 | Chrysler Capital | 2021 Chevrolet Malibu / 0685 | $4,967.86 |
| Class 10 | Nissan Motor Acceptance Company | 2023 Nissan Altima / 3911 | $7,131.06 |
| Class 11 | Nissan Motor Acceptance Company | 2021 Nissan Altima / 4550 | $5,449.37 |
| Class 12 | Nissan Motor Acceptance Company | 2024 Nissan Altima / 6976 | $12,763.77 |
| **TOTAL** | | | **$80,002.01** |

**High-Side Class 15 Addition.**

| Creditor / Source | Condition | Maximum Amount |
|---|---|---|
| Ally / 2019 Impala | Maximum deficiency before insurance credit | $21,730.76 |
| **Maximum modeled Class 15 pool** | **No double counting; subject to allowance and credits** | **$334,024.96** |

# EXHIBIT E

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES PROPOSED FOR ASSUMPTION

| Counterparty | Agreement | Estimated Cure | Status |
|---|---|---|---|
| CareCar Inc. | Transportation / provider agreement | $0.00 estimated | Term and cure subject to contract and claim review. |
| Medical Transportation Management, Inc. (MTM) | Transportation / provider agreement | $0.00 estimated | Term and cure subject to contract and claim review. |
| Modivcare Solutions LLC | Transportation / provider agreement | $0.00 estimated | Term and cure subject to contract and claim review. |

The Debtor may amend this schedule before confirmation. Inclusion does not waive any defense, claim, or right under the agreement or applicable law.